WEST END THEATRE SYNDICATE, LTD., Plaintiff, *v.* LEE SHUBERT, Defendant.

First Department, November 9, 1917.

Contract — license to produce theatrical representation — contract construed — when licensee not entitled to deduct previous losses from royalties due.

A contract between the plaintiff, a theatrical syndicate, and the defendant gave to the latter the exclusive right of producing a certain play in the United States and Canada for the period of three years, the defendant to pay to the plaintiff thirty-three and one-third per cent of the net profits accruing from every company performing the play, the profits to be arrived at after deducting the running expenses of the play, etc. It was provided that a theatrical season should run from September of one year until May in the following year and that the plaintiff licensor should not be responsible for any losses incurred in the production of the play and nothing in the agreement should be construed to constitute a partnership between the parties. The first season the play was produced

by the defendant and resulted in a loss, but the following season produced a net profit.   Contract construed, and *held*, that there was to be a settlement between the parties at the end of each theatrical season and that the defendant had no right to deduct from the plaintiff's share of the net profits of the second season one-third of the loss sustained in the preceding one, as under the contract no part of the loss was to be charged to the plaintiff.

SUBMISSION of a controversy upon an agreed statement of facts pursuant to section 1279 of the Code of Civil Procedure.

*Melville H. Cane,* for the plaintiff.

*Charles H. Tuttle* [*William Klein* with him on the brief], for the defendant.

DAVIS, J.:

The plaintiff is an English corporation and the owner and producer of dramatic compositions, and the defendant is a theatrical manager.   On May 15, 1914, the plaintiff made a contract whereby it granted to the defendant the sole and exclusive right of producing and representing in the United States and Canada a play (of which the plaintiff was the sole owner and proprietor), written by Cyril Harcourt and entitled "A Pair of Silk Stockings."   The license was for a period of three years from the date of the first performance of the play in America.   The contract is comprehensive and provides in detail as to the manner of its performance by both parties. In addition to providing for the payment of royalties to the plaintiff based on a percentage of the gross receipts, it contains among others the following paragraphs:

" (7) The Licensee shall also pay to the Licensors thirty-three and one-third per cent (33⅓%) of the net profits accruing from each and every company performing the said play in the United States of America and the Dominion of Canada. The Licensee also agrees that such profits shall be arrived at after deducting the running expenses of the said play and shall not include the deduction of any expenses of production or preliminary expenses, all such expenses up to the date of production falling on the Licensee only, and the Licensee also agrees that the expenses apart from the salaries of the company shall not exceed Seven hundred and Fifty dollars ($750)

each week except by mutual consent and that the salary list of each and every company shall be mutually agreed upon."

" (15) The Licensee shall furnish to the Licensors or to their authorized agent a balance sheet showing the profit of each and every company performing the said play at the conclusion of each season of the said play and the share of profits accruing to the Licensors shall forthwith be paid to the Licensors or to their authorized agent. A season for the purposes of this agreement shall be deemed to run from September in one year until May in the following year — unless previously determined. A season shall be considered to be determined if the play shall not be performed for two (2) consecutive weeks and all accounts shall be rendered and the sums due to the Licensors by way of profits shall be paid within two (2) weeks of such determination."

" (23) It is understood and agreed between the Licensors and the Licensee that the Licensors shall not be responsible for any losses incurred in the production or productions of the said play as aforesaid and that nothing that is herein contained shall constitute a partnership between the Licensors and the Licensee and they shall not be partners, and it is further agreed that the Licensors are the agents of the Licensee for the purpose of engaging all artists, etc., and that all contracts shall be in the name of the Licensee."

After the making of the contract the play was produced by the defendant in the United States and Canada at various times and places. All productions, however, were by a single theatrical company. The production of the play during the theatrical season of 1914–1915, covering the period from September, 1914, to May, 1915, resulted in a loss of $8,535.37, but during the next season, 1915–1916, covering the period from September, 1915, to May, 1916, the production produced a net profit of $20,292.43, if the loss of $8,535.37 incurred in the prior season is excluded in estimating the net profits for the 1915–1916 season.

The controversy as submitted for decision is, whether or not upon the foregoing facts the defendant is entitled to deduct from the plaintiff's one-third share of the profits for the season 1915–1916, one-third of the losses sustained during the season of 1914–1915.

The plaintiff claims that it is not chargeable with any part of the losses for the season of 1914–1915 in the computation of the thirty-three and one-third per cent of the profits, and that it is entitled to thirty-three and one-third per cent of the profits of the 1915–1916 season without any deduction other than a lump sum of £250 advanced on account of profits.   The defendant claims that he is entitled to charge and deduct the one-third loss for the season 1914–1915 against the share of the plaintiff's profit for 1915–1916.   In other words, the question is whether the profits and losses are to be balanced and paid as to each separate company performing at the end of each theatrical season, or whether there was to be no real balance and determination of the profits until the final termination of the contract.

It is clear from the contract submitted that there was to be a settlement between the parties at the end of each season, and that the defendant had no right to deduct from the plaintiff's share of net profits of the season of 1915–1916 one-third of the loss sustained in the preceding season.   Under paragraph 23 of the contract, *supra*, no part of the loss is to be charged to the plaintiff.

There should be final judgment in favor of the plaintiff for one-third of $8,535.37, or for $2,842.12, with interest from June 2, 1916.

CLARKE, P. J., SCOTT, SMITH and SHEARN, JJ., concurred.

Judgment directed for plaintiff as stated in opinion.   Order to be settled on notice.